507 So.2d 142 (1987)
BARNETT BANK OF JACKSONVILLE, N.A., Appellant,
v.
STATE of Florida ex rel. the DEPARTMENT OF INSURANCE, Appellee.
No. BP-155.
District Court of Appeal of Florida, First District.
May 5, 1987.
Robert J. Winicki of Mahoney, Adams, Milam, Surface & Grimsley, Jacksonville, for appellant.
Robert J. Castellanos, Florida Dept. of Ins. Div. of Rehabilitation and Liquidation, Tallahassee, for appellee.
ZEHMER, Judge.
Barnett Bank filed a petition in the ancillary receivership proceedings against Midland Insurance Company (Midland), an insolvent insurer, seeking court approval of a setoff under section 631.281, Florida Statutes (1985). The trial court denied the petition and Barnett appeals. We reverse because Barnett demonstrated the mutuality *143 of obligation necessary to establish the right to an offset under section 631.281. We also find that allowing the offset will not give Barnett an unlawful preference.
Barnett's claim to a setoff arose out of the following transactions. Midland was placed into receivership in the state of New York on April 3, 1986. On the same day, Barnett Bank honored $27,832.91 in checks drawn by Midland on its account in Chemical Bank. On April 8, the Leon County circuit court entered an order appointing the Department of Insurance ancillary receiver for Midland for purposes of liquidation of Midland's Florida assets. On April 10, Chemical Bank in New York dishonored the checks presented by Barnett.
Midland maintained an account with Barnett under the terms of a written indemnification agreement. The agreement was signed by Midland but apparently not by Barnett. The agreement provided that Barnett would honor checks drawn on Midland's account and forward them to Chemical Bank, and that Midland would maintain an account with Barnett with a minimum balance of $10,000. Barnett contends it honored the checks pursuant to this arrangement.
On May 5, Barnett filed a petition in the receivership proceedings seeking to offset Midland's debt on the checks against the $10,000 account. After a hearing, the circuit court entered an order denying the offset and ordering Barnett to "pay over to the Receiver the sum of $10,000 presently held in [Midland's] checking account." The court noted that Barnett had apparently not accepted the indemnification agreement. The court also reasoned that allowing the offset would create an unlawful preference for Barnett over Midland's other creditors, and stated that neither section 631.271 nor section 631.281, Florida Statutes (1985), permits the creation of a preference for a creditor who claims an offset.
Section 631.281(1) provides that "[i]n all cases of mutual debts or mutual credits between the insurer and another person in connection with any action or proceeding under this chapter, such credits and debts shall be set off and the balance only shall be allowed or paid, except as provided in subsection (2)." The Department of Insurance contends that this section "allows offsets only in cases of mutual debts or mutual credits between the insurer and another person," (answer brief at p. 4) and argues that the debts here were not mutual because Midland's debt did not arise until Chemical Bank dishonored the checks, several days after the receiver was appointed. We disagree with this position for the following reasons.
Section 631.251, Florida Statutes (1985), provides that the rights and liabilities of all parties become fixed as of the date of the order directing liquidation. Section 631.281(2)(a) provides that no offset will be allowed where "[t]he obligation of the insurer to such person would not at the date of the entry of any liquidation order or otherwise, as provided in s. 631.251, entitle him to share as a claimant in the assets of the insurer." Thus, for Barnett to be entitled to an offset, Midland's debt to Barnett must have arisen prior to the liquidation order of April 8, 1986.[1]
There is no dispute that on April 3, 1986, Midland maintained an account with Barnett and that Barnett was thus indebted to Midland for $10,000 on that date. The issue of when Midland became liable to Barnett for the amount of the checks Barnett accepted on April 3 is governed by the Uniform Commercial Code (UCC). Although Barnett had no cause of action against Midland until Midland's bank dishonored the checks on April 10, see section 673.122, Florida Statutes (1985), Midland's obligation to pay the underlying debts arose before the date of dishonor and before April 8, the day the Department was appointed receiver. When Barnett accepted the checks and paid cash to the payees on April 3, it became a holder with the right to enforce payment. § 673.301, Fla. Stat. (1985). The UCC specifically provides that a drawer's obligation is merely suspended until the instrument is presented to the drawee bank and dishonored:

*144 In any other case the obligation is suspended pro tanto until the instrument is due or if it is payable on demand until its presentment. If the instrument is dishonored action may be maintained on either the instrument or the obligation; discharge of the underlying obligor on the instrument also discharges him on the obligation.
§ 673.802(1)(b), Fla. Stat. (1985). Analysis of these provisions indicates that Midland became indebted to Barnett when Barnett paid cash for the checks and became a holder, but Midland's obligation to pay Barnett was suspended until the checks were dishonored.
The Department argues that mutuality was lacking because when Midland's debt to Barnett arose the funds deposited in Barnett bank were in the hands of the receiver and that Barnett's debt was thus to the receiver, not to Midland. We find no legal basis for this argument. Because Midland's obligation to pay Barnett arose, but was suspended when Barnett accepted the checks and became a holder, both Midland's debt to Barnett and the bank's obligation on the account existed before the liquidation order was entered on April 8. Thus, Barnett has demonstrated the mutuality required under section 631.281.
Appellee cites Griffin v. Gulf Life Insurance Co., 146 So.2d 901 (Fla. 1st DCA 1962), in support of its argument on this point. Griffin is factually distinguishable. In Griffin, an insurance company allegedly paid benefits to the wrong beneficiary. The benefits were placed in the recipient's bank in a savings account in her name. The trial court issued an injunction preventing the recipient from using the funds. The recipient later cashed, on her personal account, a check which was dishonored for insufficient funds. The bank sought an offset under the UCC against the savings account containing the insurance company's funds. The court held that the bank could not claim an offset against funds which did not belong to the debtor. In effect, the savings account funds were being held in trust until further order from the enjoining court. Here, by way of contrast, the funds in the Barnett account belonged to Midland and were subject to withdrawal on demand. Thus, the $10,000 account was subject to a setoff by Barnett on April 3, the day it accepted the checks.
The Department also argues that, even if Barnett is entitled to an offset within the meaning of section 631.281, that section has been impliedly limited by the 1983 enactment of section 631.271.[2] Section 631.271 created priorities for the distribution of claims. Under this section Barnett has a class 4 claim. The Department notes that, if Barnett is allowed an offset, their claim will be satisfied up to the amount of Midland's deposit before the claims of creditors who would normally be given priority under section 631.271. The Department argues that this result was not intended by the legislature and that section 631.271 should be read to limit the amount of offset allowed under section 631.281. We find, however, that section 631.281 was amended at the same time section 631.271 was enacted and can be applied in this case without violating the intent of section 631.271. The offset permitted by 631.281 is, by its very nature, a specie of preference. It requires that qualifying mutual obligations be set off against each other and that "the balance only shall be allowed or paid." Its purpose is to provide a preference to this limited extent. This is consistent with 631.271 because that section, by creating priorities of claims, also prefers some creditors over others. We decline to limit the clear and unambiguous language of section 631.281. Accordingly, we disapprove the ruling of the circuit court that the application of section 631.281 in this case gives Barnett an unlawful preference.
We REVERSE the appealed order and REMAND for further proceedings consistent with this opinion.
THOMPSON and BARFIELD, JJ., concur.
NOTES
[1] The order was actually signed by the circuit judge on April 9, 1986, "nunc pro tunc to April 8, 1986." It was filed in the clerk's office on April 9. Because of our resolution of this issue, we need not address whether the order became effective on the 8th or the 9th.
[2] Ch. 83-38, Laws of Fla.