606 So.2d 429 (1992)
NOVA INSURANCE GROUP, INC., Appellant,
v.
FLORIDA DEPARTMENT OF INSURANCE, Appellee.
No. 91-2554.
District Court of Appeal of Florida, First District.
September 11, 1992.
*430 Arthur J. England, Jr., Charles M. Auslander, and Burt S. Hellman of Fine, Jacobson, Schwartz, Nash, Block & England, Miami, for appellant.
Helen Ann Hauser of Dittmar & Hauser, P.A., Coconut Grove, and Mary Beth Perry and Dennis K. Threadgill of the Dept. of Insurance, Tallahassee, for appellee.
ALLEN, Judge.
Nova Insurance Group, Inc. (Nova) appeals an order entered in this action arising under the Insurers Rehabilitation and Liquidation Act, sections 631.001 to 631.399, Florida Statutes (1989). In the challenged order, the trial court denied Nova's motion for relief from stay, directed that a certain escrow fund be transferred to the Florida Department of Insurance (the department) as ancillary receiver for a foreign insurer, and required Nova to file any claims it has against the fund in the circuit court of Leon County. We affirm in part and reverse in part.
On September 29, 1989, Central National Insurance Company of Puerto Rico (Central) executed a stock purchase agreement in which it agreed to sell all of the stock of American Professional Insurance Company (Ampro) to First Security Corporation. Days later, First Security Corporation assigned its rights and obligations as buyer of Ampro to Nova. The agreement contemplated a closing date on January 31, 1990 and a post-closing date sometime thereafter. On the closing date, Central was to deliver the stock of Ampro to Nova which would become its lawful owner, and Nova was to escrow $2,679,999, representing Ampro's net worth as of May 31, 1989, or "initial net worth." The escrow fund was to be distributed after the parties' approval of various financial statements and adjustments to Ampro's initial net worth. The agreement provided further that thirty days after the closing, an accounting firm working for Central would prepare and distribute to the parties Ampro's current balance sheet and other financial documents regarding Ampro's valuation known as the "closing date financial statements." Nova then had forty-five days in which to dispute or accept the documents. If Nova disputed the accuracy of the documents and the parties could not resolve the dispute within fifteen days, the matter would be referred to another accounting firm whose final determination would be binding. Based upon the closing date financial statements as finally determined, the purchase price would be adjusted upward or downward from the initial net worth figure on a dollar for dollar basis and the cash due from Nova on the post-closing date would be adjusted accordingly.
The parties later modified the stock purchase agreement to allow for a closing on February 8, 1990. On that date, Ampro's stock was transferred to Nova, Nova deposited into escrow the agreed-upon sum and the parties executed an escrow agreement recognizing Intercontinental Bank of Miami as their escrow agent. In the escrow agreement, Intercontinental Bank promised to hold the fund until authorized to disburse it in accordance with the provisions of the stock purchase agreement. Any disputes arising under the escrow agreement concerning disbursement of the money were to be settled by mutual agreement *431 or by a final judgment of the circuit court of Dade County.
On July 3, 1990, Nova notified Central of its dispute of the accuracy of Central's closing date financial statements. Thereafter, the parties tried unsuccessfully to resolve their dispute, and Nova sued Central in the circuit court of Dade County. Nova's amended complaint, filed in October of 1990, sought an order compelling arbitration of the parties' dispute by the accounting firm referenced in the stock purchase agreement, a declaration of the parties' rights under the escrow agreement, and, alternatively, a judgment directing the escrow agent to disburse the escrow funds to Nova due to Central's material breach of the escrow agreement. All three counts of the complaint sought a judgment against Central for Nova's attorney's fees and costs. Central answered the complaint, asserted various affirmative defenses alleging that Nova's dispute of the accounting firm's valuation of Ampro was untimely, and filed a counterclaim.
While the suit between Nova and Central was pending, Central was declared insolvent and Puerto Rico's commissioner of insurance was appointed as the company's liquidator. Thereafter, the department petitioned the trial court for appointment as Central's ancillary receiver for purposes of liquidation. On January 28, 1991, the petition was granted. The court's order authorizes the department to take immediate possession of Central's property "of every kind whatsoever and wherever located in this State," commence and maintain legal actions necessary to administer the receivership, and collect all debts owing to Central which it is economically feasible to collect. The order also gives notice pursuant to section 631.041(1), Florida Statutes, that the department's petition operates as an automatic stay, applicable to all persons other than the receiver, which prohibits the "commencement or continuation of judicial, administrative or other action or proceeding against [Central] or against its assets or any part thereof."
Thereafter, the department sought an order to show cause why the money held in escrow by Intercontinental Bank in connection with the sale of Ampro should not be transferred to the department for placement in a separate receivership account. The department argued that at least some portion of the money had to be an asset of Central's and any person making a claim to that money should be required to file his claim in the trial court. Pursuant to the department's request, the trial court issued a show cause order, to which Nova responded. Nova opposed any transfer of the escrowed funds, arguing that because it had funded the account and the conditions of its disbursement had never been satisfied, the money remained its own and therefore could not be an asset of Central's subject to control by the department as receiver. Simultaneously, Nova moved for relief from the automatic stay affecting its Dade County suit, arguing that the circuit court of Dade County was the proper forum for a determination of Central's right to any portion of the escrowed money.
In the order we now review, the trial court denied Nova's motion for relief from the stay and directed the transfer of the funds held by Intercontinental Bank to the department as ancillary receiver for Central. The order requires the department to deposit the funds in a separate, interest-bearing account in a bank which is an approved depository in the state and prohibits the department from disbursing the funds without a court order. Finally, the order directs Nova to file in the trial court "all claims which it asserts against the funds ... and, in accordance with Chapter 631, Florida Statutes, any claims which it asserts against the Receivership." Nova asserts as error the court's transfer of the escrowed funds, its imposition of the claims procedure of Chapter 631 and its denial of Nova's motion for relief from the stay. We address Nova's arguments seriatim.
The Insurers Rehabilitation and Liquidation Act is Florida's version of the Uniform Insurers Liquidation Act originally approved in 1939 by the National Conference of Commissioners on Uniform State Laws and the American Bar Association. See Unif. Insurers Liquidation Act, 13 U.L.A. 322 (1986); and Springer v. Colburn, *432 162 So.2d 513, 514 n. 1 (Fla. 1964). There appears to be no dispute that Puerto Rico, Central's domiciliary state, is a "reciprocal state" within the meaning of section 631.011(14), Florida Statutes, defined as a state other than Florida in which, in substance and effect, the provisions of Florida's act are in force. In the context of Florida's version of the uniform act, Central is a foreign insurer. Because Puerto Rico appointed its commissioner of insurance as Central's domiciliary receiver for purposes of liquidating the company, the department was entitled to seek appointment as Central's ancillary receiver for purposes of liquidation. § 631.091, Fla. Stat. The authority of the ancillary receiver when liquidating an insurer domiciled in a reciprocal state is described in sections 631.152 and 631.131. The former statute vests in the domiciliary receiver the title to all of the insurer's property, contracts, rights of action and books and records located in Florida and provides that where, as here, an ancillary receiver is appointed, the ancillary receiver has the sole right to recover "the other assets of the insurer located in this state." § 631.152(2), Fla. Stat. See also, Florida Ins. Guar. Assoc., Inc. v. State, ex rel. Dept. of Ins., 400 So.2d 813 (Fla. 1st DCA 1981). Section 631.131(2) provides that an order to liquidate the Florida assets of a foreign insurer requires the department to take possession of and liquidate the insurer's Florida property "with due regard to the rights and powers of the domiciliary receiver."
It was pursuant to these statutes and section 631.154 that the department sought to obtain possession of the escrow fund held by Intercontinental Bank. Section 631.154 provides in pertinent part:
(1) Any person who holds funds or other property belonging to an entity subject to an order of ... liquidation under this chapter shall deliver the funds or other property to the receiver on demand. Should the person allege any right to retain the funds pursuant to s. 631.155, s. 631.191, s. 631.261, s. 631.262, s. 631.263, or s. 631.281, a pleading setting out the right shall be filed with the court within 20 days of the receipt of the receiver's demand that the funds or property be delivered to the receiver. The pleading of the person shall inform the court as to the nature of the claim to the property, the alleged value of the property or amount of funds held, and what action has been taken by the person to preserve and protect the property or to preserve any funds.
(2) If requested by the receiver, a hearing shall be held to determine where and under what conditions the property or funds shall be held by the person. The court may impose conditions as it may deem necessary or appropriate for the preservation of the property or funds to the receiver until the court can determine the validity of the person's claim to the property or funds. If any property or funds are allowed to remain in the possession of the person after demand made by the receiver, that person shall be strictly liable for any waste, loss, or damage of the property or funds retained.
(3) If a person has filed a pleading alleging any right to retain funds or property, the court shall hold a subsequent hearing to determine entitlement to the funds or property claimed by the receiver.
(4) This section shall apply to all proceedings brought by the receiver to recover funds or property believed by the receiver under this chapter to be assets of the entity subject to an order of ... liquidation.
The department argues that pursuant to this section, the receiver is entitled not only to delivery of funds or property which belong to the insolvent insurer, it is entitled to delivery of funds or property merely "believed by the receiver to be assets" of the insurer. While the department's position, based upon language in subsection (4), is initially appealing and would support the trial court's order with respect to the escrowed funds in this case, we are not persuaded that it is consistent with a common sense reading of section 631.154 as a whole. The very first sentence of the statute reflects that it applies to funds or property belonging to the entity in receivership, but possessed by some other person. The *433 remainder of subsection (1) addresses situations where the person in possession of the insurer's property seeks to retain possession because he has some claim to the property of his own. Section 631.154(1)'s reference to the offset provisions of section 631.281 provides an example of just such a situation. See also, Sunset Commercial Bank v. Florida Dept. of Ins., 509 So.2d 366 (Fla. 1st DCA 1987); and Barnett Bank of Jacksonville, N.A. v. State ex rel. Dept. of Ins., 507 So.2d 142 (Fla. 1st DCA 1987), construing section 631.281. Subsection (2) of section 631.154 describes what the court must do if the receiver seeks to impose conditions upon the person in possession of the insurer's property pending the court's determination under subsection (3) of the validity of that person's claim. Finally, there is subsection (4) with its ambiguous reference to property believed by the receiver to be assets of the insurer. Based upon that language, we simply cannot ascribe to the legislature an intent to change the focus of the entire section which is, undoubtedly, upon property belonging to the insurer but in the possession of another.
Our interpretation of section 631.154 is buttressed by numerous sections of the act which, like sections 631.152 and 631.131 discussed above, restrict the receiver's activities to recovering property of the insurer. We are also mindful of the cases suggesting that in receivership proceedings like this one, the receiver "stands in the shoes of" the insolvent insurer. Cf. Main Ins. Co. v. Bradford, Williams, McKay, Kimbrell, Hamann & Jennings, P.A., 369 So.2d 380, 382 (Fla. 3d DCA 1979); and Corcoran v. Frank B. Hall & Co., Inc., 149 A.D.2d 165, 545 N.Y.S.2d 278, 280 (N.Y. App. Div. 1989) (construing New York's version of the uniform act). If Central could not obtain possession of the escrowed funds without litigation in the circuit court of Dade County, neither can the department as receiver for Central. In sum, we hold that because the escrow fund is not Central's property, but rather, is property of Nova's to which Central has a claim, see Cosentino v. Elson, 263 So.2d 253 (Fla. 3d DCA 1972), the trial court erred in directing a transfer of the fund to the receiver at this juncture.
Nova next argues that the trial court erred in requiring it to file its claim to the escrowed funds in the Chapter 631 proceeding commenced by the department's petition. In support of that order, the department relies upon section 631.153 which provides:
No person shall be allowed to intervene in any delinquency proceeding in this state brought under this chapter for the purpose of seeking or obtaining payment of any judgment, lien, or other claim of any kind. The claims procedure set out in ss. 631.161, 631.171, 631.181, 631.182, 631.191, 631.192, and 631.193 constitutes the exclusive means of obtaining payment of claims from the receivership estate.

(Emphasis added). In our view, this section is inapplicable to Nova's claim to the escrowed funds because, as already noted, those funds are not, at this time, properly a part of the receivership estate. Our attention is directed to several cases reflecting the broad variety of claims which must be brought in the court administering the receivership, see e.g., Sunset Commercial Bank, 509 So.2d at 367; and In Re Receivership of Syndicate Two, Inc., 538 So.2d 945 (Fla. 1st DCA 1989), but we are unaware of a case in which a litigant was required to pursue a claim to property not belonging to the insurer, and thus not in the receivership estate, in the court administering the receivership. But cf., Mall Bank v. State ex rel. Dept. of Ins., 462 So.2d 519, 520 (Fla. 1st DCA 1985) and Sunset Commercial Bank, 509 So.2d at 367 (construing section 631.181 to require the filing of all claims against an entity in receivership, as opposed to claims against the receivership estate, in the receivership court). We note that the appealed order not only requires Nova to pursue its claim to the escrow fund in the trial court, it requires Nova to pursue its claims against the receivership in the trial court. To the extent that Nova's Dade County suit seeks damages, fees and costs against Central which, if successful, would be satisfied out *434 of Central's assets, we affirm this portion of the court's order.
Finally, Nova argues that the trial court erred when it refused to lift the stay imposed upon Nova's Dade County suit against Central. The department insists that the stay was appropriate pursuant to section 631.041(1)(a) which prohibits "the commencement or continuation of judicial, administrative, or other action or proceeding against the insurer or against its assets or any part thereof." Because Nova's suit against Central is undoubtedly a suit against the insurer, it was properly affected by this automatic stay provision. We reject Nova's argument that its suit is an act to create, perfect or enforce a secured claim as defined in section 631.011(15), and therefore, it should not have been stayed pursuant to section 631.041(1)(d). A good example of the application of the secured claim exemption may be found in Manuel A. Sierra, M.D. v. International Medical Centers, Inc., 538 So.2d 102 (Fla. 3d DCA 1989).
Section 631.041(2) describes the procedure by which a person affected by the automatic stay may seek relief from the stay. The statute provides:
Upon written request of a person or entity subject to the stay against obtaining or enforcing a judgment against an insurer or affiliate provided in paragraph (1)(b) the court, with notice to the department and upon hearing, may grant relief from the stay provided the movant, who has the burden of proof, establishes by clear and convincing evidence that the judgment is not voidable or void by a receiver and that property from which the judgment would be satisfied does not constitute premium funds or another asset which belongs to the insurer.
We must affirm the trial court's determination that Nova did not demonstrate its entitlement to relief from the stay pursuant to this section because we have not been provided with a transcript of the hearing on Nova's motion. See Applegate v. Barnett Bank of Tallahassee, 377 So.2d 1150, 1152 (Fla. 1979) ("In appellate proceedings the decision of a trial court has the presumption of correctness and the burden is on the appellant to demonstrate error."); and Starks v. Starks, 423 So.2d 452 (Fla. 1st DCA 1982). Moreover, we note that even if Nova demonstrated beyond question that any judgment it may obtain against Central in Dade County will not be voidable by the receiver, Nova's demand in that suit for an award of damages, fees and costs from Central would, if successful, be satisfied from Central's "premium funds or another asset which belongs to the insurer."
As to Nova's claim to the escrow fund, we recognize that the trial judge might have denied relief from the stay simply because he had determined that the escrow funds would have to be transferred to the department and that claims against the fund would have to be filed in the receivership court. Because those determinations are reversed by this opinion, Nova may wish to renew that portion of its motion which asks for relief from the stay as to its claim to the escrow fund. We offer no opinion as to the merits of any such renewed motion.
Accordingly, we reverse those portions of the appealed order which direct a transfer of the escrow fund to the department as receiver for Central and require Nova to pursue its claim to the fund in the receivership court. We affirm the portion of the order which requires Nova to pursue its other claims in the receivership court, and we affirm the denial of Nova's motion for relief from the stay imposed upon its suit against Central in the circuit court of Dade County.
BARFIELD and KAHN, JJ., concur.