DAVIS, Judge.
The Florida Department of Insurance, as receiver for Southeastern Reinsurance Company, Inc. and Southeastern Casualty and Indemnity Insurance Company, Inc. appeals the trial court’s order on claim of right filed by Centex-Great Southwest Corporation (“GSW”) as that order was modified by order on the receiver’s motion for rehearing, and an order on the receiver’s motion to tax costs and assess attorney’s fees. This case arises *648 out of a demand by the receiver pursuant to section 631.154, Florida Statutes, for return of funds of the receivership estate, which funds were being held by GSW. The trial court awarded GSW certain sums which GSW claimed as set-offs from funds belonging to the receivership estate. On appeal, the receiver challenges the trial court’s finding that GSW had a claim of right to funds claimed by GSW as set-offs and the court’s award of statutory prejudgment interest on the set-off funds. The receiver also asserts as error the trial court’s failure to award the receiver full reimbursement for the costs of collection of the receivership funds. GSW cross-appeals and asserts that the trial court lacked subject matter jurisdiction, under section 631.154, over the dispute between the receiver and GSW, a claimant in the receivership, as to the receiver’s entitlement to payment of funds assigned to its predecessor and the amount of set-off to which GSW was entitled. GSW also cross-appeals the partial summary judgment holding that GSW’s parent corporation’s claims could not be set-off against funds due and owing from GSW. Because we find that the trial court erred in awarding statutory interest on the set-off in the course of a receivership proceeding conducted under Chapter 631, we reverse that award. Because we find a lack of evidence to support the set-off of $29,516.28 allowed by the trial court, we reverse that award. The trial court did not err in disallowance of certain costs. We find no merit to the other issues raised by the receiver nor to the issues raised on cross-appeal by GSW, and therefore affirm as to those issues.
Insolvent insurers, Southeastern Reinsurance Company, Inc. and Southeastern Casualty and Indemnity Insurance Company, Inc. (“Southeastern”) were liquidated by orders of the Leon County Circuit Court on September 1, 1989. The Florida Department of Insurance was appointed as statutory receiver pursuant to Chapter 631. The companies were treated as one and the cases were consolidated. Prior to their liquidation, the Southeastern companies had been in the insurance and surety business, issuing payment and performance bonds for contractors engaged in the construction business in Florida. Two of the companies’ surety bonds were issued in favor of GSW guaranteeing the performance of subcontractors Peerless Electric, Inc. (“Peerless”) and Bloomingdale Landscape Nursery, Inc. (“Bloomingdale”) in relation to subcontracts for work on the Orlando International Airport. GSW was the general contractor.
Both Peerless and Bloomingdale defaulted under their subcontracts. Peerless defaulted in June 1988; Bloomingdale defaulted in July 1988. Southeastern, as the surety, undertook the completion of the subcontracts. Southeastern used an affiliated entity, Contractors Performance Corporation (“CPC”), to supervise the two contracts. Peerless executed an assignment of the “proceeds of contract number 115” to Southeastern. After entry of the liquidation order, the receiver entered into a formal settlement agreement with Peerless by which the funds due to Peerless under the bonded subcontract were to be formally assigned to the receiver. The settlement agreement was approved by the receivership court by order dated November 27, 1989. Bloomingdale’s principal also assigned all of the proceeds from the Bloomingdale subcontract to Southeastern. The Bloomingdale assignment occurred on July 7, 1988, prior to the liquidation of Southeastern. When Southeastern was liquidated, the Peerless and Bloomingdale subcontracts were not yet completed. The receiver monitored the completion of the subcontracts.
The subcontract between GSW and Bloomingdale required Bloomingdale to furnish all the landscaping work in connection with two parking structures referred to as “A” side parking garage and “B” side parking garage. After Southeastern failed to perform the work on the “B” side, GSW subcontracted most of the remaining work on the “B” side to Morgan Brothers (“Morgan”). A letter from GSW to Southeastern dated September 2, 1988, indicated that Morgan was to finish the “B” side for the sum of $36,000. After Morgan was selected to complete the “B” side, GSW and Southeastern executed a document called change order number 2. The effect of the change order was to allow GSW a credit for the work Morgan was doing on the “B” side.
*649 On January 25, 1989, Mr. Amatulli of CPC wrote to the president of Morgan and advised him that no extra work should be undertaken on the project without written approval from CPC’s field representative. On November 22, 1989, Mr. Szalapski, on behalf of the receiver, wrote a letter to the president of Morgan advising him that there was no written approval and no documentation for a $29,516.28 payment and that the receiver would therefore not authorize the charge. After the receiver learned that GSW had paid Morgan $29,516.28 for overtime, Mr. Szalapski wrote a letter to the president of GSW stating that Morgan had been fully paid and that the payment was not justified.
In May of 1990, GSW filed proofs of claim in the receivership court stating a claim of unknown amount on both the Peerless and Bloomingdale bonds. On December 2, 1991, in accordance with section 631.154, Florida Statutes, the receiver made a demand on GSW to deliver $185,256 plus accrued interest on the Peerless subcontract and $37,-482.69 plus accrued interest on the Bloomingdale subcontract, which the receiver claimed were funds belonging to the receiver.
GSW and Centex-Rooney Enterprises, Inc., GSW’s parent corporation, filed a response to demand and claim of right which set forth a right to a set-off. In their response, the corporations alleged that the receivership owed money in other bond claims to Centex-Rooney Enterprises, Inc. The receiver moved for partial summary judgment on the corporations’ defense, alleging that the parent company had no right to a set-off because the corporations were separate legal entities. The trial court entered partial summary judgment in favor of the receiver. The trial court also ordered GSW to report to the court, in accordance with section 631.154(1), Florida Statutes, the value of any property or funds held and what action had been taken by GSW to preserve and protect the property or to preserve the funds pending determination of the dispute between GSW and the receiver.
In response to the court’s order, GSW reported that the Peerless and Bloomingdale subcontracts had been completed and reported the balance due under the subcontracts. The receiver filed a motion to strike the report and a motion for an evidentiary hearing pursuant to section 631.154(2) on the grounds that the report failed to comply with the court’s order and was statutorily deficient because the report failed to set out the alleged value of property or the amount of funds held and what action had been taken by GSW to preserve and to protect the property or to preserve the funds pending determination of the dispute. After a hearing on the receiver’s motion to strike, the court ordered GSW to deposit $222,738.69, the entire amount in dispute, in a court controlled interest bearing account pursuant to section '69.031, Florida Statutes. GSW deposited the funds in a money market account at First Union National Bank in Tallahassee.
On November 6, 1992, the parties appeared for an evidentiary hearing on the receiver’s demands and GSW’s claims of set-off. The receiver’s expert, Alan Lougheed, evaluated the claim documents submitted by GSW. With regard to change order number 2, Mr. Lougheed testified that $62,000 should not have been deducted for landscaping on the “B” side parking garage because Southeastern had hired Morgan to complete the total contract for $36,000. Witnesses for both GSW and the receiver testified that change order number 2 was approved and executed by Southeastern.
Mr. Lougheed testified that the overtime payment of $29,516.28 to Morgan was not justified based on the documents he reviewed. Mr. Lougheed testified that Morgan’s contract required Morgan to complete the contract and that Morgan was not allowed any overtime. Mr. Lougheed noted that GSW issued a check to Morgan for the overtime despite receiving instructions from CPC not to make the payment. Mr. Lough-eed explained that unless that subcontractor actually causes the delays which necessitate overtime work, the contractor cannot “back charge” such overtime against funds due to the subcontractor. Correspondence from Morgan indicated that Morgan ran into unanticipated problems for which Morgan was not responsible.
Mr. Gillmore, a general contractor for GSW, admitted that the receiver did not sign *650 off on the $29,516.28 payment. Mr. Gillmore testified that he gave back up for the payment to the receiver, but was unable to produce documentation showing that the back up was provided. Mr. Gillmore testified that the charges were an obligation of GSW’s for which Morgan could have filed suit if Morgan had not been paid.
In the final judgment on the claim of right of GSW, the trial court found that GSW had a claim of right in the amount of $127,803.76 and ordered this amount to be returned to GSW. The court awarded GSW 12 percent statutory interest on the amount from the date the funds were deposited in the court ordered account. -In the court’s order on the receiver’s motion for rehearing, the court deducted an “administrative fee” previously awarded to GSW and ordered that GSW was entitled to $102,735.44.
On June 2, 1993, the court entered an order granting, in part, and denying, in part, the receiver’s motion to tax costs and assess attorney’s fees. Part of the costs denied by the court were salaries and expenses related to the receiver’s staff.
On appeal, the receiver argues that the .trial court erred in (1) awarding statutory prejudgment interest to GSW; (2) misplacing the burden of proof and in misapprehending the evidence by allowing a set-off for the $29,516.28 claim for overtime; (3) improperly applying an estoppel to validate a transaction made within six months of the insurer’s insolvency[1]; and (4) failing to order full reimbursement of the receiver’s expenses of collection, including per diem and staff salaries, pursuant to section 631.154(6)(d).
On cross-appeal, GSW argues that the trial court did not have subject matter jurisdiction pursuant to section 631.154 based on this court’s decision in Nova Ins. Group, Inc. v. Florida Dep’t of Ins., 606 So.2d 429 (Fla. 1st DCA 1992). GSW further asserts that the trial court erred in (1) granting the receiver’s motion for partial summary judgment on the issue of whether the claims of GSW’s parent corporation could be set-off against funds due and owing from GSW; (2) ordering GSW to deposit $222,738.69 in a court controlled account predicated solely on the receiver’s demand pursuant to section 631.154, Florida Statutes; and (3) awarding the receiver attorney’s fees and costs pursuant to section 631.154(6)(d).
Several issues warrant discussion. First, the receiver argues on appeal that the trial court erred in awarding GSW prejudgment interest at the statutory rate of 12 percent, rather than the proportionate share of interest actually earned in the money market account on the deposited funds. We reverse the award of statutory prejudgment interest.
Although section 631.154(5) exempts the receiver from the provisions of section 57.-111, Florida Statutes,[2] Chapter 631, Part I, is silent concerning the award of prejudgment interest on funds ultimately determined by the receivership court not to be property of the receiver. The receiver argues that the court’s award of statutory prejudgment interest is contrary to Chapter 631 as drafted and construed. The receiver asserts that the court’s award of prejudgment interest diminishes the receivership estate to the detriment of innocent claimants and thus has the effect of penalizing the receiver for doing precisely what the receiver is statutorily authorized to do and what the receiver’s duty to marshal assets requires. We agree.
The effect of the court’s award of prejudgment interest is to diminish the receivership estate which will be available to other persons or entities with claims against the insolvent insurance companies. We therefore hold that the trial court erred in awarding GSW statutory prejudgment interest, rather than its proportionate share of interest actu *651 ally earned on the deposited funds. We incidentally note that the trial judge conceded at a hearing held after the receiver’s appeal was filed that, after hearing arguments of counsel, GSW probably should instead have been awarded its proportionate share of interest earned on the funds in the money market account.
The receiver arg-ues that the trial court erred in finding that GSW had a claim of right for the $29,516.28 overtime payment to Morgan because GSW failed to meet its burden of showing that the payment was properly within the scope of the bonded subcontracts. We find a lack of evidence in the record to support the trial court’s finding. GSW had the burden of proving its entitlement to a set-off. At the hearing, the receiver introduced evidence that the $29,516.28 payment was not justified and was not authorized by the receiver. Report letters by Morgan introduced into evidence indicated that project delays were not attributable to Morgan. Mr. Gillmore, a general contractor for GSW, admitted that the receiver did not sign off on the $29,516.28 payment. Mr. Gillmore claimed that he gave back up for the payment to the receiver, but was unable to produce documentation that the back up was provided. Although GSW introduced evidence that if GSW failed to pay Morgan, Morgan could have filed a claim against GSW and its surety on GSW’s payment and performance bond, GSW failed to meet its burden of showing why the overtime payment should be charged to the receiver.
The receiver further argues that the trial court erred in not awarding $42 per diem for meals and $2,183.15 in staff salaries pursuant to section 631.154(6)(d). Pursuant to section 631.154(6)(d), we conclude that the receiver failed to establish that these items were necessary to the recovery of the property or funds.
In GSW’s cross-appeal, GSW argues that the funds at issue were never liquidated assets of the insolvent insurer in the hands of a third party and, therefore, the trial court never had subject matter jurisdiction over the receiver’s claim. GSW relies on this court’s opinion in Nova Ins. Group, Inc. v. Florida Dep’t of Ins., 606 So.2d 429 (Fla. 1st DCA 1992) in support of this argument. Nova, however, is entirely distinguishable from the present case.
In Nova, prior to being declared insolvent, Central National Insurance Company of Puerto Rico executed a stock purchase agreement whereby Central agreed to sell all of the stock of American Professional Insurance Company to First Security Corporation. First Security assigned its rights and obligations to Nova Insurance Group, Inc. Closing was to be on January 31, 1990, with a later post-closing date. On the closing date, Central was to deliver the stock to Nova, and Nova was to place in escrow $2,679,999. The escrow fund was not to be distributed until after the parties’ approval of various financial statements. The closing date was subsequently changed to February 8, 1990, pending completion of all the conditions contained in the stock purchase agreement. The money was placed by Nova with Intercontinental Bank as escrow agent. In July 1990, Nova notified Central that it disputed the accuracy of the closing date financial statements of Central. This dispute eventually resulted in a suit in Dade County wherein Nova, among other things, asked the trial court to disburse to it the escrow funds due to Central’s material breach of the escrow agreement. At the time this suit was pending, Central was declared insolvent. The Florida Department of Insurance, as ancillary receiver for purposes of the liquidation of Central, sought an order to show cause why the money deposited in the escrow account by Nova should not be transferred to the department for placement in a separate receivership account. The department argued that at least a portion of the money in the escrow account had to be an asset of Central and that any person making a claim to the money should be required to file a claim in the trial court. In response to the trial court’s show cause order, Nova argued that, because it had funded the account and the conditions of its disbursement had never been satisfied, the money remained its own and therefore could not be an asset of Central subject to the control by the department as receiver. The trial court directed transfer of the escrow *652 funds to the department as ancillary receiver for Central.
Nova argued on appeal to this court that the trial court erred in ordering the transfer of the escrow funds, in imposing the claims procedure of Chapter 631, and in denying Nova’s motion for relief from a stay of proceedings against Central or its assets. This court held that, because the escrow fund did not belong to Central, but rather was the property of Nova to which Central had a claim, the trial court erred in directing a transfer of the escrow fund to the receiver at that time. Nova, 606 So.2d at 432. This court further reasoned that if Central could not obtain possession of the escrowed funds without litigation in the Circuit Court of Dade County, neither could the department as receiver for Central.
GSW argues that under Nova, the receivership court never had subject matter jurisdiction under section 631.154 because the funds were never the liquidated funds of Southeastern in the hands of a third party. GSW asserts that, because it had a set-off defense to the funds, the receiver could not claim the contract funds as assets of the receiver. GSW further argues that GSW should not be considered a third party under the statute.
There is no question that the trial court had subject matter jurisdiction over the receiver’s claim. See section 631.021, Florida Statutes. Moreover, Nova is not controlling. In Nova, Nova successfully argued that title to the escrowed funds never passed from Nova because the conditions of the escrow were never satisfied. In the present case, the receiver established that the contract funds claimed on both subcontracts were the property of the insolvent insurer. Therefore, those funds could properly be characterized as property belonging to the insurer in the possession of another. There was no dispute that the contract funds payable to the subcontractors belonged to the receivership. Further, the funds were liquidated amounts when the trial court ordered the funds deposited in the special account.
Accordingly, we reverse the award of statutory prejudgment interest to GSW, reverse the finding that GSW had a claim of right for the $29,516.28 payment, and affirm in all other respects.
KAHN and WEBSTER, JJ., concur.

. This ground was not raised by the receiver at the evidentiary hearing and, in fact, was raised for the first time in the receiver’s motion for rehearing. The trial court did not address this ground in the final judgment or order on receiver's motion for rehearing. The trial court did not err in the allowance of change order number 2.

. Section 57.111 allows litigants to recover attorney's fees and costs for a successful defense against civil actions or administrative proceedings initiated by a state agency.