999 So.2d 693 (2008)
IMAGINE INSURANCE CO., LTD., Appellant,
v.
STATE of Florida ex rel. the DEPARTMENT OF FINANCIAL SERVICES of the State of Florida, and American Superior Insurance Company, a Florida Corporation, Appellees.
No. 1D07-6027.
District Court of Appeal of Florida, First District.
December 16, 2008.
Rehearing Denied January 26, 2009.
*694 James A. McKee and Christopher M. Kise of Foley & Lardner, LLP, Tallahassee, for Appellant.
Jody Collins of Florida Department of Financial Services, Miami, and Helen Ann Hauser of Restani, Dittmar & Hauser, P.A., Coral Gables, for Appellees.
KAHN, J.
Imagine Insurance Company ("Imagine") appeals an order granting summary judgment in favor of appellee Department of Financial Services ("Department") and denying Imagine's motion for summary judgment. This case involves the interpretation of a structured reinsurance contract ("Contract") between Imagine and appellee American Superior Insurance Company ("American Superior"), a Florida property and casualty insurer. Imagine makes two claims regarding the trial court's construction of the Contract: (1) the court erred in finding Imagine wrongfully retained an offset of $630,000 when it paid the policy limit of $2,000,000; and (2) the trial court erred in finding Imagine could not recover the Non-Renewal Charge as provided in the Contract. We reverse.

I. BACKGROUND
Effective June 1, 2004, the Contract required American Superior to pay a premium of $900,000 per year in exchange for Imagine's agreement to reimburse American Superior for up to $2,000,000 per year in losses. Pursuant to the Contract, "[t]he non-refundable first installment of $270,000 [was] due and payable on June 1, 2004" and "[t]he remaining three installments in an amount of $210,000 each installment, [were] due and payable on September 1 and December 1, 2004 and March 1, 2005." As part of the Contract, a Trust Agreement created a $1,000,000 account at Wachovia Bank, funded by American Superior for the sole benefit of Imagine.
American Superior suffered a major hurricane loss in August 2004 for which Imagine paid the coverage limits, less the three quarterly premiums that were scheduled to be paid in future months. Almost immediately American Superior experienced insolvency. On September 29, 2004, the circuit court issued a Consent Order of rehabilitation appointing the Department as Receiver of American Superior. Among other things, the Consent Order vested all of American Superior's property rights in the Receiver, placed the Receiver in charge of any reinsurance premiums or recoveries, ordered all banks *695 and financial institutions to transfer American Superior's assets to the Receiver without executing any set-off rights, and prohibited any transfers of assets without the Receiver's consent.
When notified of the Consent Order, Imagine gave 30 days' notice of its intent to terminate the Contract pursuant to the Contract's Special Termination provisions, specifically paragraph (b), subsections (2) and (3). The termination became effective November 4, 2004. Imagine also advised that, "in accordance with the Contract's Special Termination provisions, the Commutation provisions of the Contract are triggered" and that, "[a]s a result of the contractually mandated Commutation and the applicable Non Renewal Charge provision, the Non Renewal Charge of $959,000 (70% of the absolute value of the negative experience account balance, currently valued at $1,370,000) (the `Non Renewal Charge') is due from American Superior and is payable to Imagine on November 2, 2004."
On December 15, 2004, the circuit court entered an order appointing the Department as Receiver for purposes of liquidation. In response to a demand by the Receiver, pursuant to section 631.154, Florida Statutes,[*] Imagine asserted, in February 2005, a right to recover and retain its Non-Renewal Charge of $959,000, to be paid from the trust assets. The Receiver denied this charge was payable. Pointing out that Imagine elected to terminate the contract, the Receiver demanded repayment of unearned premium previously deducted by Imagine as well as release of the trust assets. With the issues thus framed and after some discovery, both parties moved for summary judgment.
In the Order on Motions for Summary Judgment, the court concluded:
E. Imagine Insurance Company wrongfully retained on August 25, 2004, $630,000 of the $2,000,000 indemnity payable when it paid $1,370,000, rather than the $2,000,000 policy limit because there were no installments due at the time Imagine Insurance Company deducted the same and Imagine Insurance Company had no right to accelerate the due date of future premium installments.
F. The Receiver does acknowledge, however, that Imagine Insurance Company is entitled to the premium that was earned during the time the policy was in effect. A simple proration of the premium earned from September 1, 2004, through November 4, 2004, the date Imagine Insurance Company cancelled the contract, reveals that Imagine Insurance Company would be entitled to $114,658.25, for which Imagine Insurance Company may file an unsecured claim in this Receivership.
G. By cancelling the contract on November 4, 2004, Imagine Insurance Company rendered itself unable to claim a non-renewal charge.
H. On September 29, 2004, when American Superior Insurance Company *696 was placed in rehabilitation, no claim had been made by Imagine Insurance Company on the trust account at Wachovia Bank and on and after said date the Order of this Court prevented any attempt by Imagine Insurance Company to perfect a security interest therein. Thus, the entire $1,000,000 trust account is property of the Receivership estate which the Receiver is authorized to claim.
The court directed Wachovia Bank to turn over to the Receiver "all funds which it presently holds pursuant to the Trust Agreement." The court further directed that the Receiver recover from Imagine the sum of $630,000, with interest at the statutory rate from August 23, 2004, and alloted to Imagine an allowed unsecured claim for earned premium in the amount of $114,658.25.

II. ANALYSIS

A. Standard of Review
"The trial court's interpretation of the contract is a matter of law subject to a de novo standard of review." Jenkins v. Eckerd Corp., 913 So.2d 43, 49 (Fla. 1st DCA 2005). "It is a fundamental rule of contract interpretation that a contract which is clear, complete, and unambiguous does not require judicial construction." Jenkins, 913 So.2d at 50. The determination of whether a contract, or a term therein, is ambiguous also presents a question of law subject to de novo review. See, e.g., Univ. of Miami v. Frank, 920 So.2d 81 (Fla. 3d DCA 2006); Strama v. Union Fid. Life Ins. Co., 793 So.2d 1129, 1132 (Fla. 1st DCA 2001); Centennial Mortgage, Inc. v. SG/SC, Ltd., 772 So.2d 564, 566 (Fla. 1st DCA 2000). "[I]f the facts of the case are not in dispute, the court will also be able to resolve the ambiguity as a matter of law." Strama, 793 So.2d at 1132; accord, e.g., Team Land Dev., Inc. v. Anzac Contractors, Inc., 811 So.2d 698, 699-700 (Fla. 3d DCA 2002).

B. Premium Offset
Applying these principles, we find Imagine appropriately deducted the $630,000 in premiums not yet paid from the loss payment to American Superior, pursuant to the provisions in the Contract. The Contract specifically provides: "Any loss payments from the Reinsurer shall be offset against any outstanding premium installments due for the Contract Year." (emphasis added). The dictionary defines "outstanding" as "uncollected" and "unpaid." Webster's Third New Int'l Dictionary (Unabridged) 1604 (1966). If this sentence were read to mean Imagine could offset only premium installments past due but not paid, as the trial court evidently read it, this would render superfluous the language "due for the Contract Year." The more logical meaning of the Contract, and the understanding actually acted upon before the advent of insolvency by the Reinsurer and American Superior, contemplates the Reinsurer will offset, against any loss payments, the uncollected or unpaid premium installments remaining for the Contract Year.
Further, Imagine completely performed its obligation under the Contract by paying the maximum benefit in August 2004, so a windfall would result for American Superior if American Superior were not required to pay the full premium. In August 2004, Imagine provided the protection paid for by the full premium and, thus, pursuant to the Contract, properly offset the remaining portion of the premium. Had American Superior sustained another loss before the end of the Contract Year, May 31, 2005, Imagine would have had no obligation at all under the Contract.
Accordingly, we conclude the trial court erred in its interpretation of the Contract. *697 Pursuant to the Contract terms, Imagine properly offset the remaining premium installments from the loss payment made to American Superior in August 2004.

C. Non-Renewal Charge
The trial court determined Imagine "rendered itself unable to claim a non-renewal charge" because Imagine cancelled the Contract on November 4, 2004. In support of this ruling, the Receiver points to, among other things, the Contract language providing, "Should the Reinsurer elect to decline to offer renewal terms as described above, the Reinsurer shall forfeit the Non Renewal Charge." Reference to the renewal terms "as described above," however, implicates the section on Contract Renewal, which did not take place in this case.
When notified of the Consent Order, Imagine gave 30 days' notice of its intent to terminate the Contract. Imagine acted pursuant to the Contract's Special Termination provisions, specifically paragraph (b), subsections (2) and (3), of the Special Termination section. The termination became effective November 4, 2004. Imagine also advised that, "in accordance with the Contract's Special Termination provisions, the Commutation provisions of the Contract are triggered" and that, "[a]s a result of the contractually mandated Commutation and the applicable Non Renewal Charge provision, the Non Renewal Charge of $959,000 (70% of the absolute value of the negative experience account balance, currently valued at $1,370,000) (the `Non Renewal Charge') is due from American Superior and is payable to Imagine on November 2, 2004." We must undertake review of the Contract in order to evaluate Imagine's position.
Specifically, the Special Termination section provides, in pertinent part:
(b) The Reinsurer may terminate this Contract at any time by giving 30 days written notice to the Company in the event any of the following circumstances occur, and commutation shall occur in accordance with the provisions of the COMMUTATION Article:
2. A State Insurance Department or other legal authority has ordered the Company to cease writing business; or
3. The Company has become insolvent or has been placed into liquidation or receivership (whether voluntary or involuntary) or proceedings have been instituted against the Company for the appointment of a receiver, liquidator, rehabilitator, conservator or trustee in bankruptcy, or other agent known by whatever name, to take possession of its assets or control of its operations;
The Commutation Article, referenced in paragraph (b) above, provides:
In the event that the Experience Account Balance is positive, the Company may commute this Contract upon 30 days' prior written notice. If the Experience Account Balance is negative, the Company and the Reinsurer may mutually agree to commute this Contract at any time subject to no losses and with 30 days prior written notice to the other party and to the Bank, in its capacity as trustee of the Trust. Upon commutation, if the Experience Account is positive, then the Reinsurer shall pay the positive balance in the Experience Account to the Company. If the Experience Account is negative, then the Company shall pay the Non Renewal Charge equal to 70.0% of the absolute value of the negative Experience Account Balance. In the event of commutation, the Reinsurer shall be released from all obligations and any future liabilities under or related to this Contract as of the effective date of commutation and the Reinsurer shall receive the fully earned *698 Reinsurer's Margin with no credit for early commutation.
(emphasis added). Here, the Experience Account balance was negative $1,370,000, reflecting the payment of the total policy coverage in August 2004. Accordingly, pursuant to the Contract terms quoted and emphasized above, American Superior was obligated to pay the Non-Renewal Charge of 70% of $1,370,000, which equals $959,000.
The Receiver acknowledges that Imagine terminated the Contract pursuant to the Special Termination provision and, further, quotes the Commutation section. The Receiver, however, quotes only the second sentence of the Commutation section, which provides the parties may "mutually agree to commute this Contract." Contrary to the Receiver's apparent premise, such did not occur in this case. The Receiver also points to the Insolvency section of the Contract. Again, though, this is not the section under which Imagine terminated the Contract, as acknowledged by the Receiver.
In denying Imagine's claim for the Non-Renewal Charge, which, under the Contract would be paid from the trust account, the trial court also found:
On September 29, 2004, when American Superior Insurance Company was placed in rehabilitation, no claim had been made by Imagine Insurance Company on the trust account at Wachovia Bank and on and after said date the Order of this Court prevented any attempt by Imagine Insurance Company to perfect a security interest therein. Thus, the entire $1,000,000 trust account is property of the Receivership estate which the Receiver is authorized to claim.
This trust was established as a material condition of the Contract, as indicated in the Contract section titled Trust Account:
The Company shall establish a trust account at a Bank to secure its obligations hereunder (the "Trust"). Amounts deposited into the Trust by the Company will be used to pay or reimburse the Reinsurer in the event that the Company defaults on its obligations to the Reinsurer under the terms of this Contract. Upon Commutation of this Contract, the Reinsurer will provide written notice to the bank within five (5) business days instructing the Bank, in its capacity of Trustee, to release the funds in the trust.
On the first day of each Contract Year for which this Contract is in effect, the Company will ensure that it deposits funds into Trust such that: (i) with respect to the first Contract Year, it will deposit an initial amount of $1,000,000; (ii) with respect to the second Contract Year, it will deposit additional funds such that the amount in the Trust will be at least $1,750,000; and (iii) with respect to the third Contract Year, it will deposit additional funds such that the amount in the Trust will be at least $2,300,000.
The Company acknowledges that its ability to fund the Trust as set forth herein is a material condition to the Reinsurer's agreement to enter into this Contract and any renewals thereof.
(emphasis added). The Trust Agreement incorporates the Contract by reference:
WHEREAS, the Grantor [American Superior] and the Beneficiary [Imagine] have entered into the reinsurance agreement described in Exhibit A hereto (the "Reinsurance Agreement");
WHEREAS, the Beneficiary desires the Grantor to secure Grantor's Obligations (defined in Section 16 hereof) to the Beneficiary at any time and from time to time under or in connection with the Reinsurance Agreement;

*699 WHEREAS, the Grantor desires to transfer to the Trustee [Wachovia] for deposit to a trust account (the "Trust Account") assets in order to secure Grantor's Obligations to the Beneficiary under or in connection with the Reinsurance Agreement;
WHEREAS, this Agreement is made for the sole use and benefit of the Beneficiary and for the purpose of setting for the duties and powers of the Trustee with respect to the Trust Account.
The Trust Agreement provides:
All Assets deposited into the Trust Account shall be held in trust by the Trustee [Wachovia] or its successor for the sole benefit of the Beneficiary [Imagine] at all times and for such period as the Grantor's [American Superior's] Obligations to the Beneficiary exist under or in connection with the Reinsurance Agreement, as the Beneficiary may, in its sole discretion, determine, provided such discretion shall be exercised reasonably.
The trust agreement's definition of "Obligations" includes Non-Renewal Charges.
Thus, from the plain language of the Contract and Trust Agreement, Imagine established entitlement to the Non Renewal Charge, to be paid from the trust account. The Department counters that because Imagine sought such payment after American Superior was in receivership, Imagine may not realize the benefit of the Contract and Trust Agreement. Section 631.251, Florida Statutes (2004), provides:
Date rights fixed on liquidation.Except as provided in ss. 631.192 and 631.252, the rights and liabilities of the insurer and its creditors, policyholders, stockholders, members, and subscribers and all other persons interested in its estate shall, unless otherwise directed by the court, be fixed as of the date on which the order directing the liquidation of the insurer is filed in the office of the clerk of the court which made the order, subject to the provisions of this chapter with respect to the rights of claimants holding contingent claims. No offset shall be allowed in favor of any person unless the claim of offset is fully mature, or, in the case of a reinsurance agreement, the insurer's obligation is incurred, as of the date on which the order directing the liquidation of the insurer is filed in the office of the clerk of the court which made the order, and a claim of offset shall not create a secured claim to any funds or property in the possession of the person claiming offset.
(emphasis added). Section 631.281, Florida Statutes (2004), addresses offsets and provides:
(1) In all cases of mutual debts or mutual credits between the insurer and another person in connection with any action or proceeding under this chapter, such credits and debts shall be set off and the balance only shall be allowed or paid, except as provided in subsection (2).
(2) No offset shall be allowed in favor of any such person where:
(a) The obligation of the insurer to such person would not at the date of the entry of any liquidation order or otherwise, as provided in s. 631.251, entitle her or him to share as a claimant in the assets of the insurer. Any such obligation must be fully vested and mature as of the date of the order of liquidation and in no way contingent upon any future event or condition precedent to allow an offset. In the case of a reinsurance agreement, the insurer's obligation must be incurred as of the date of the order of liquidation to allow an offset.

(b) The obligation of the insurer to such person was purchased by or transferred *700 to such person with a view of its being used as an offset.
(emphasis added).
Reading these statutes together, we conclude that for Imagine, as a reinsurer, to recover the Non-Renewal Charge, such obligation by American Superior must have been incurred as of the date of the liquidation order, December 15, 2004. Given the analysis set forth above, American Superior incurred that obligation as early as October 6, 2004, when Imagine wrote to the Receiver, notifying it of the termination of the Contract and requesting payment of the Non-Renewal Charge in accordance with the Contract terms, but not later than November 4, 2004, when the Contract cancellation became effective. Cf. Sunset Commercial Bank v. Fla. Dep't of Ins., 509 So.2d 366, 367 (Fla. 1st DCA 1987) (reversing circuit court's order that directed bank to transfer balance of deposit accounts to Department: "At the time of the Department's appointment as receiver and the order of liquidation these deposit accounts were subject to a potential contractual claim upon the promissory note. Sunset Commercial Bank did not assert such a claim until after the order of liquidation, at which time section 631.181, Florida Statutes, requires the filing of claims in the receivership court."); see also Barnett Bank of Jacksonville v. State, Dep't of Ins., 507 So.2d 142, 143 (Fla. 1st DCA 1987) (reversing denial of setoff sought by bank in ancillary receivership proceeding and explaining, among other things, "Although Barnett had no cause of action against Midland [the insolvent insurer] until Midland's bank dishonored the checks on April 10, see section 673.122, Florida Statutes (1985), Midland's obligation to pay the underlying debts arose before the date of dishonor and before April 8, the day the Department was appointed receiver." (emphasis in original)).
The Department advances the case of Nova Insurance Group, Inc. v. Florida Department of Insurance, 606 So.2d 429 (Fla. 1st DCA 1992), as similar to the present matter. In Nova, this court found that funds held in escrow were not property of the insolvent insurer, Central National Insurance Company of Puerto Rico ("Central"). Id. at 433. Nova Insurance Group ("Nova") had deposited into escrow an agreed-up sum, and Nova and Central had "executed an escrow agreement recognizing Intercontinental Bank of Miami as their escrow agent." Id. at 430. A dispute arose between Nova and Central and, subsequently, Central was declared insolvent and a liquidator and ancillary receiver were appointed. Id. at 431. The receiver sought to claim the money held in escrow, and the trial court directed the transfer of those funds to the receiver. Id. This court reversed:
[W]e hold that because the escrow fund is not Central's property, but rather, is property of Nova's to which Central has a claim, the trial court erred in directing a transfer of the fund to the receiver at this juncture.
Id. at 433 (internal citation omitted).
The Department argues this case is the converse of Nova and, accordingly, Imagine's claim to the funds placed in the trust by American Superior had not matured before all rights were frozen by the circuit court. A distinction exists, however, because the funds here are in a trust account. "In a trust relationship, the trust beneficiary possesses an equitable ownership in the trust property, while the trustee possesses legal title to the property." Brevard County v. Ramsey, 658 So.2d 1190, 1196 (Fla. 5th DCA 1995). Imagine, then, stands as the equitable owner of the trust money. We do not disagree with *701 Nova and, following the logic of that case, the trust funds are not "properly a part of the receivership estate." Nova, 606 So.2d at 433.
The parties make arguments concerning the voidable transfer and preference statutes and whether Imagine was a bona fide holder for value under the insolvency code. We find these arguments involve factual determinations not made or addressed by the trial court. Moreover, we note that nothing in the record indicates or suggests the Contract was not entered into in good faith.

III. CONCLUSION
As to the issues presented, this case presents no factual dispute; thus, the trial court properly considered the issue of any ambiguity in the Contract. We find, however, that the trial court erred in its interpretation of the Contract. Pursuant to the Contract terms, Imagine properly offset the remaining premium installments from the loss payment made in August 2004. Further, the funds in the trust account are not part of the receivership estate and Imagine is entitled to the Non-Renewal Charge, to be paid from that account. Accordingly, the order on appeal is REVERSED. Further disposition will be consistent with this opinion.
VAN NORTWICK, and PADOVANO, JJ., concur.
NOTES
[*] Section 631.154(1), Florida Statutes (2004), addresses "[f]unds, assets, or other property in the possession of third person" and provides: "If the receiver determines that funds, assets, or property in the possession of another person are rightfully the property of the estate, the receiver shall deliver to such person a written demand for immediate delivery of the funds, assets, or property to the receiver, referencing this section by number, referencing the court and docket number of the receivership action, and notifying the person that any claim of right to the funds, assets, or property by her or him must be presented to the court within 20 days after the date of the written demand. Any person who holds funds, assets, or other property belonging to an entity placed in receivership under this chapter shall deliver the funds, assets, or other property to the receiver on demand...."